UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**EFRAIN MARTELL,**
**on behalf of himself and all others**
**similarly situated**
      **Plaintiff,**

**vs.**                             **CASE NO. 15-22580-CIV-WILLIAMS**

**ARS NATIONAL SERVICES, INC.,**
      **Defendants.**
_____/

**DEFENDANT ARS NATIONAL SERVICES, INC.'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS AND**
<u>**MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

Defendant, ARS NATIONAL SERVICES, INC. ("ARS"), by and through its

undersigned counsel, moves this Court for an Order granting it a judgment on the pleadings and

dismissing Plaintiff, EFRAIN MARTELL'S ("Plaintiff") claims pursuant to Federal Rule of

Civil Procedure 12(c). As set forth more fully below, there exist no issues of material fact to be

resolved. Therefore, judgment in favor of Defendant and against Plaintiff is warranted.

<u>**INTRODUCTION**</u>

The issue presented by the Amended Complaint is simple: whether the presence of a

barcode on the front of an envelope violates the Fair Debt Collection Practices Act, 15 U.S.C.

§1692 *et seq.* (hereinafter "FDCPA"). Plaintiff alleges the presence of the barcode, which

allegedly stores information such as Plaintiff's account number, is the equivalent of having his

personal financial information printed on the front of the envelope. (*See* Doc. 7 at ¶ 11). This

position requires the Court to ignore that the barcode is not printed in plain English on the

envelope; rather, it is simply a rectangular shaped box made out of black lines separated by white

space.  Without being scanned, the information stored in the barcode is as protected as if it were inside the envelope.  Further, scanning the barcode is a violation of federal postal laws, meaning the information stored in the barcode can only be accessed by a third-party through illegal means.  Although no court in the Eleventh Circuit has addressed whether a barcode on the outside of an envelope violates the FDCPA, for the reasons outlined above, courts in other circuits have held that a barcode embedded with a consumer's account number is a benign symbol that does not violate § 1692f(8).  *See Waldron v. Prof'l Med. Mgmt.*, Civil Action No. 12-1863, 2013 U.S. Dist. LEXIS 34402 (E.D. Pa. 2013) ("Without a scanner, a QR Code Symbol is simply a pattern of black and white markings shaped into a square . . . the Code's use here would not suggest to third parties that Plaintiff had been sent a collection letter . . . [and] [i]n these circumstances, I conclude that the QR Code Symbol is benign and does not violate the Act."); *see also Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004). Because the information stored in the barcode can only be accessed by a third party using illegal actions, it would be inappropriate to impose liability on ARS for its mere existence.

## FACTUAL BACKGROUND

On June 11, 2014, ARS mailed Plaintiff a single collection letter with a barcode printed below ARS' address.  (*See* Doc. 7 at Exhibit A).  The barcode was visible through a glassine window in the front of the envelope at the time the letter was mailed and delivered.  (*See* Doc. 7 ¶ 11).  The barcode must be scanned or read with a barcode reading device to reveal any information.  (*See* Doc. 7 at ¶ 11).   The envelope in which the June 11, 2014 letter arrived was a plain white envelope with no markings, logo, words or other indication that it was being sent to the Plaintiff from any debt collector.  (*See* Doc. 7 at Exhibit A).  Moreover, the return address on the envelope is a Post Office Box return address in Oaks, Pennsylvania owned, operated and

subject to the exclusive control of a mailing service (who provides services to a wide range of for profit and not for profit businesses and again would provide no indication related to the substance of the contents inside the envelope or that the correspondence in any way related to debt collection). (*See* Doc. 8 at ¶ 11).  There are no facts alleged in the Plaintiff's complaint regarding any other possible indicia of debt collection on the outside of the envelope because there were no words, markings, addresses, or logos that could readily identify this piece of mail in a plain white envelope as a communication related to debt collection.  In short, unless the barcode itself revealed the fact of debt collection, a creditor or debt collector's name, or any similar information, it in and of itself does not provide a wrongdoer with any opportunity to commit identity theft, violate the Plaintiff's privacy, or become aware the Plaintiff has a debt collection matter unless the wrongdoer physically opens the envelope.

Like any other barcode, the barcode at issue is a series of variously sized parallel lines and spaces located under the sender's address marks that is meaningless with the proper scanning equipment.  However, if the barcode is viewed with a scanner-equipped device, containing the appropriate scanner software or applications, Plaintiff alleges the device displays Plaintiff's account number, which is the internal tracking number ARS has assigned to Plaintiff, and figures that equal Plaintiff's alleged debt.  (*See* Doc. 7 at ¶ 11, 15(d))[1].  If scanned the barcode reveals a series of numbers, among them a reference number randomly assigned to the Plaintiff's account by ARS's collections software but no "figures that equal Plaintiff's alleged debt" and most importantly the series of numbers embedded in the bar code do not equate to or contain any of Plaintiff's personally identifiable information.  In fact, the series of numbers in the barcode have no significance to any individual or entity other than ARS.  The series reflects randomly assigned

---

[1] Plaintiff does not allege in the general allegations that the figures equal the amount of his debt but in his proposed class he includes such a reference.   It would appear the class reference is a typographical error.

3

batch and inventory numbers placed on the envelope by a mail vendor for processing purposes only.  (*See* Doc. 8 ¶ 11)  At no time would any of the Plaintiff's creditor's account number be embedded in the barcode, the barcode does not reference ARS,, the return address visible on the plain white envelope is NOT ARS's address or post office box, and nothing at all would otherwise imply that the contents of the envelope relate to collection activity. *See id.*  To interpret the sequence of information embedded within the barcode would require an understanding of ARS' independent letter vendor's internal coding.  Moreover, there is nothing on the front of the envelope or embedded in the barcode that gives any context to the information contained in the barcode.  (*See* Doc. 7 at Exhibit A).  In fact, unless a third party took the random and incredible logical leap that the seemingly random string of numbers is in fact a specific debt, all the information contained in the barcode would remain indecipherable to anyone aside from ARS and/or the mail vendor.

Further, it is a violation of federal law for anyone beside the addressee to scan the barcode.  Private individuals are prohibited from taking another's mail with the specific intent to obstruct the correspondence or prying into the business or secrets of another.  This includes scanning a barcode on the front of an envelope, which is tantamount to opening the letter and reading the enclosed correspondence.  Thus, the only way to access the information stored in the barcode is by violating federal law and tampering with the mail.

## LEGAL ARGUMENT

## I.      STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Ramey v. Interstate Fire & Cas. Co.*, 32 F.Supp.3d 1199, 1203 (S.D. Fl. 2013).  In considering a motion for judgment on the pleadings, the court may consider "the

substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1370 (11th Cir. 1998).

A judgment on the pleadings will be granted where no material facts remain at issue and the movant is entitled to judgment as a matter of law." *See Ramey*, 32 F.Supp.3d at 1203 (citing *Hawthorne*, 140 F.3d 1367 at 1370). A court will "accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). Under Rule 12(b)(6), plaintiff's complaint "requires more than labels and conclusions; he must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ramey*, 32 F.Supp.3d at 1203 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This standard is only met "where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1230 – 31 (11th Cir. 201) (internal quotations omitted) (quoting *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014)).

The Court, when confronted with a Rule 12(b)(6) motion to dismiss, generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records. *Ramey*, 32 F.Supp.3d at 1204. While courts generally cannot consider matters extraneous to the pleadings, a court may, however, consider documents attached to a motion for judgment on the pleadings without converting it into one for summary judgment if the documents are (1) central to the plaintiffs claim and (2) their authenticity is not challenged. *Id.* (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

## II.    PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE FDCPA AS A MATTER OF LAW.

### A.  The FDCPA was Not Intended to Prohibit Benign Symbols.

Although § 1692f(8) of the FDCPA prohibits any language or symbol from appearing on an envelope, the section "was intended merely to prevent debt collectors from embarrassing debtors by announcing the delinquency on the outside of a debt collection letter envelope." *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 494 (5th Cir. 2004).  Despite this narrow purpose, the Act prohibits:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Although the language of the Act may appear extreme, "Congress enacted §1692f(8) simply to prevent debt collectors from "using symbols on envelopes indicating that the contents pertain to debt collection."  *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004 (quoting *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Cal. 1991 (emphasis in original)); *see also Lindbergh v. Transworld Sys., Inc.*, 846 F.Supp. 175, 180 (D. Conn. 1994) (noting that the legislative purpose of 1692f(8) "was to prohibit a debt collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection – not to totally bar the use of harmless words or symbols on an envelope").

Thus, when interpreting §1692f(8), courts have consistently found that "benign" language or symbols do not violate the Act's prohibitions.  For example, the Eighth Circuit has adopted a "benign words and symbols" exception, recognizing that such an exemption "better effectuates

Congressional purpose and because a strict reading would lead to bizarre and impracticable consequences." *Strand*, 380 F.3d at 320.  Based on this reasoning, the Eighth Circuit concluded that "the statute does not proscribe benign language and symbols." *Id.* (rejecting a claim that a corporate logo and debt collector's initials on the envelope violated § 1692f(8), reasoning that they "were benign because they did not, individually or collectively, reveal the source or purpose of the enclosed letters"); *see also Goswami*, 377 F.3d at 494 (rejecting a claim under § 1692f(8) based on language, "priority letter," on the envelope because § 1692f(8) "only prohibits markings on the outside of envelopes that are unfair or unconscionable, such as markings that would signal that it is a debt collection letter and tend to humiliate, threaten, or manipulate debtors"); *see Masuda*, 759 F.Supp. at 1466 (finding that "(1) notice that theft of mail or obstruction of delivery is a federal crime, (2) the language 'PERSONAL & CONFIDENTIAL' and (3) the phrase 'Forwarding and Address Correction Requested' on the outside of an envelope was not an FDCPA violation); *Johnson v. NCB Collection Servs.*, 799 F.Supp. 1298, 1304-05 (D.Conn. 1992) (finding that the phrase "Revenue Department" on the outside of an envelope was not an FDCPA violation); *Lindbergh*, 846 F.Supp. at 180 (finding that the word "TRANSMITTAL" on the outside of an envelope was not an FDCPA violation).

As these circuit and district courts have recognized, an exception to § 1692f(8) is necessary to avoid bizarre and impracticable consequences.  *See Strand*, 380 F.3d at 318.  If § 1692f(8) is applied "as written," then nothing, without exception, may be included on an envelope other than a debt collector's address.  A strict reading of the statute would prohibit 1) a stamp (especially if the stamp has on its face anything other than the amount of the postage, e.g., a Martin Luther King, Jr. or Abraham Lincoln commemorative), 2) a return address, 3) barcodes placed on envelopes by the U.S. Postal Service for its own tracking and inventory as well as

postage metering purposes, or 4) even the name and address of the person to whom the letter was sent.  Therefore, "every court given the opportunity has created a benign language exception to this subsection, under which a defendant only violates § 1692f(8) if the markings on the envelope 'signal that it is a debt collection letter, [or] tend to humiliate, threaten, or manipulate [the] debtor.'"  *Douglass v. Convergent Outsourcing*, 2013 U.S. Dist. LEXIS 110708, *7 (E.D. Pa. 2013), *rev'd on other grounds,* 765 F.3d 299 (3d Cir. 2014) (quoting *Goswami*, 377 F.3d 488, 493 (5th Cir. 2004)).

Significantly, "whether the benign language exception applies is a question of law," making it appropriate for resolution on a motion for judgment on the pleadings.  *Waldron*, 2013 U.S. Dist. LEXIS 34402 at *9.

### B.  The Barcode that Appeared on Plaintiff's Envelope is a Benign Symbol.

The barcode that was visible on Plaintiff's plain white envelope is a benign symbol.  As stated above, other district and circuit courts, have applied a "benign language exception" to the § 1692f(8) prohibition to avoid producing absurd results in its enforcement.  *See Waldron v. Prof'l Med. Mgmt.*, Civil Action No. 12-1863, 2013 U.S. Dist. LEXIS 34402 (E.D. Pa. 2013); *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-19 (8th Cir. 2008); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 494 (5th Cir. 2004); *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 180 & n. 27 (D. Conn. 1994); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991); *Gonzalez v. FMS, Inc.*, Civil Action No. 14-9424, 2015 U.S. Dist. LEXIS 87660 (N.D. Ill. 2015).  Under the benign language exception, § 1692f(8) must be interpreted "in concert with the Act's purpose: 'to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors,' and to prevent 'disclosing the consumer's personal affairs to third persons.'"  *Waldron*, 2013 U.S. Dist. LEXIS 34402 at **5-6 (citing S. Rep. No. 95-382, at 1, 4

(1977); *see also Goswami*, 377 F.3d at 494 (noting § 1692f(8) was intended to prevent debt collectors from embarrassing debtors by announcing the delinquency of a debt on the outside of a letter envelope); *see also Gonzalez*, 2015 U.S. Dist. LEXIS 87660 at *13 (holding that in context and in light of the purposes of the FDCPA § 1692f(8) "was only intended to prohibit markings that could be considered unfair or unconscionable, not those that are innocuous or benign."). Thus, where the exception applies, "[a] debt collector does not violate [§ 1692f(8)] by using an envelope with words or notations that do not suggest the [debt related] purpose of the communication." *Goswami*, 377 F.3d at 494.

Likewise, the FTC has interpreted 15 U.S.C. § 1692f(8) to permit the presence of "harmless words or symbols" on envelopes. FTC Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,108 (Dec. 13, 1988). Markings on the exterior of an envelope are generally considered 'harmless' where the symbol "does not 'reveal the source or purpose of the enclosed letter.'"[2] *Waldron*, 2013 U.S. Dist. LEXIS 34402 at *9 (citing *Strand*, 380 F.3d at 319; *Lindbergh*, 846 F. Supp. at 180).

In *Waldron*, the Eastern District of Pennsylvania held unequivocally that the presence of a QR code storing Plaintiff's account number on the exterior of an envelope did not violate § 1692f(8) because "the embedded data is a seemingly random series of letters and numbers that only [the debt collector] can decipher." *Waldron*, 2013 U.S. Dist. LEXIS 34402, **12-13. The court acknowledged the code alone, "without a scanner… is simply a pattern of black and white

---

[2] Interestingly, the Consumer Financial Protection Bureau ("CFPB") released its perspective on the harm to be prevented in written communications within its Examination Procedures for Debt Collection (the "Procedures"). The published Procedures direct a field examiner to determine if a debt collector is in the practice of "disclosing the debt collector's identity and the purpose/nature of the communication" in written communications. The CFPB's examples include (a) sending postcards to communicate with the consumer regarding the debt or (b) if a debt collector uses its business name on envelopes – does the business name indicate that it is in the debt collection business. *See Procedures @ 11.* With the prevalence of information on the internet, arguably any business name and/or address could be associated with a debt collector through a reasonably easy internet search.

markings shaped into a square," that "does not reveal the source or purpose of the enclosed letter." *Waldron*, 2013 U.S. Dist. LEXIS 34402 at *9 (internal citations omitted).  Furthermore, businesses often use "[barcodes] for many different purposes," and the simple appearance of a barcode on the outside of an envelope "would not suggest to third parties that plaintiff had been sent a collection letter."  *Id.* at *10.  Thus, because the simple existence of a barcode on an envelope does not suggest the purpose of the communication, "its inclusion on [an] envelope's face… does not violate the Act."  *Id.* at *13.

As described above, courts have generally refused to find violations of § 1692f(8).  When researching this issue, only twenty-seven (27) cases are found when searching for FDCPA or "fair debt collection" and 1692f(8) in the same sentence as "language or symbol."  Of these twenty-seven cases, in only three was a debt collector found to have violated § 1692f(8).  In *Hodges v. Armada*, 342 B.R. 616, 625 (E.D. Wash. 2006), a debt collector violated this provision "by sending a window envelope where anyone seeing that envelope could see the statement "You have a total of $1,278.04 owing at this . . . ."  It is not surprising that this type of disclosure would lead to liability, although the facts of the *Hodges* case bear no relation to those presently before the Court.  The disclosure of this sort of information clearly 1) indicates the purpose of the letter was for debt collection, 2) that the indebtedness in question was alleged by the debt collector to be delinquent, and 3) could potentially cause embarrassment or harm to the person to whom it was sent.

In *Douglass v. Convergent* Outsourcing, 765 F.3d 299 (3d Cir. 2014), the Third Circuit overruled a district court's finding that an account number on the outside of the envelope did not violate the FDCPA.  The Third Circuit did not, however, consider the barcode issue on appeal, and left the district court's holding that the presence of a QR code would not humiliate, threaten

or manipulate the Plaintiff undisturbed.  *Douglass v. Convergent* Outsourcing,765 F.3d 299,  (3d Cir. 2014).  In fact, the Third Circuit cited to *Waldron* in its Opinion, noting its decision to adopt the benign language exception, and its applicability to a barcode storing Plaintiff's account information under § 1692f(8).  *Id* at 304, n.6; *see also Johnson v. NCB Collection Servs.*, 799 F.Supp. 1298, 1304-05 (D. Conn. 1992) (holding no violation of § 1692f(8) occurred where a return payment envelope contained a barcode embedded with consumer's name, address, account number, and amount of debt because it was "hardly apparent that any individual unenlighted in [Defendant's] encoding process could have deciphered Johnson's debt from the printed series of numbers and letters").

Outside of the *Douglass* ruling in the Third Circuit, no other court in the country has interpreted the language or symbol restrictions in § 1692f(8) so broadly.  Aside from a single district judge in *Douglass'* circuit, *see Styer v. Prof.'l Med. Mgmt., Inc.*, NO. 3:14-CV-2304, 2015 U.S. Dist. LEXIS 92349 (M.D. Pa. July 15, 2015) and *see Kostik v. ARS National Services, Inc.*, NO. 3:14-CV-2466, 2015 U.S. Dist. LEXIS 95230 (M.D. Pa. July 22, 2015), not a single court has relied on *Douglass* to find a violation of § 1692f(8).  In fact, courts in other districts have affirmatively taken steps to limit the holding of *Douglass* to the specific facts of its case. For example, in an extremely recent opinion, the Northern District of Illinois refused to extend the holding of *Douglass* to situations where an account number was embedded into a string of numbers on the outside of an envelope.  *See Gonzalez v. FMS, Inc.*, Civil Action No. 14-9424, 2015 U.S. Dist. LEXIS 87660, *17 (N.D. Ill. July 6, 2015); *Lucienna Gelinas v. Retrieval Masters Creditors Bureau, Inc.*, No. 15-cv-116, (W.D.N.Y. July 22, 2015); *Perez v. Global Credit and Collection, Corp.,* No. 1:14-cv-09413-CM (S.D. N.Y., July 27, 2015).   The court reasoned that the FTC's interpretation of § 1692f(8) coupled with the opening paragraph of §

1692f(8) (prohibiting a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt) limited the applicability of the statue to only those "markings that could be considered unfair or unconscionable." *Id.* at 13. Essentially, the court defined the clear language exception to include any language or symbol that was not "unfair or unconscionable." *Id.* In applying this standard to the facts, the court stressed the absurdity of finding a violation of the FDCPA where a seemingly random string of numbers – which had no meaning to anyone but the Defendant – was seen by a third -party. *Id.* at **15-16. While the Northern District of Illinois acknowledged that the account number in *Douglass* may have invaded the debtor's privacy, the court specifically refused to extend *Douglass'* reasoning to situations where a third party "viewing the envelope could not plausibly divine that the letter inside was associated with a delinquent debt." *Id.* (citing *Strand*, 380 F.3d at 319 ("Even from the perspective of an unsophisticated consumer, the envelopes must have appeared indistinguishable from the countless items of so-called junk mail found daily in mailboxes across the land.")).

Similarly, in another post-*Douglass* opinion out of the Northern District of Illinois, the court summarily rejected the argument that the presence of an internal tracking number could violate section 1692f(8). *Sampson v. MRS BPO, LLC*, Civil Action No. 15 C 2258, 2015 U.S. Dist. LEXIS 32422 (N.D. Ill. Mar. 17, 2015). The *Sampson* court described the section 1692f(8) claim, arising from the presence of an internal tracking number visible on the exterior of the envelope, as "a bad joke – a joke because the claims are so patently absurd, and a bad one because $400 has been wasted on a filing fee." *Id.* at *2. The court opined a member of the public would have to possess "x-ray vision that enabled him or her to read the letter contained in the sealed and assertedly offending envelope" to determine the contents of the enclosed correspondence, because "absent that, any deciphering of the impenetrable string of numbers and

symbols on the outside of the… envelope would have to depend on some sort of divination." *Id.* at *3.   The court further stated the allegations in the complaint were "simply not the stuff of which any legitimate invocation of the Act or its constructive purposes [could] be fashioned." *Id*

Like *Gonzalez* and *Sampson*, it is inconceivable that a bar code – a jumble of thick and thin lines of differing heights, separated by white space, that are incoherent and unintelligible to the naked eye – could possibly be associated with a delinquent debt or constitute an unfair or unconscionable attempt to collect a debt.   As courts in other jurisdictions have found, the *Douglass* opinion should either not be followed, *see Davis v. MRS BPO, LLC*, No. 15-2303, 2015 U.S. Dist. LEXIS 91726, at *13 (N.D. Ill. July 15, 2015) ("Because an unsophisticated consumer would not perceive the approximately 60 letters and numbers on Plaintiff's envelope as connected to a debt collection, the core concern of privacy as highlighted in the *Douglass* decision does not come into play.") and *Perez v. Global Credit and Collection, Corp.,* No. 1:14-cv-09413-CM (S.D. N.Y., July 27, 2015 (*Douglass* court's conclusion was "simply *ipse dixit,* unsupported by any analysis") , or should be limited to only those scenarios where the Plaintiff's account number is listed on the outside of the envelope.  *See Gonzalez*, 2015 U.S. Dist. LEXIS 87660, at *15 – 16.   Where an account number [or in this case a mail tracking number] is obscured and hidden, such as being imbedded in a bar code or a random string of numbers, courts should continue to find that no violation of the FDCPA has taken place.

Plaintiff relies on a tortured interpretation of the Third Circuit opinion in *Douglass* to support his position, alleging the existence of the barcode constitutes "unfair and unconscionable collection practices."  (Doc. 7 at ¶ 24).  In reality, the narrow Third Circuit ruling in *Douglass* pertained only to circumstances where the account number itself is printed on an envelope without the protection of being stored in a barcode.  765 F.3d at 302.   Under those specific

circumstances, the court held that a benign language exception would not apply.  *Id.* at 303.  As previously explained, this Court is under no obligation to follow the Third Circuit's holding in *Douglass*.  Even if this Court finds *Douglass'* reasoning persuasive, it is undeniable that the *Douglass* court was not presented with the issue of whether a barcode containing a consumer's account number or a mail tracking number would violate the FDCPA.  *Id.*  Since any such holding would create "bizarre and impracticable" consequences, this Court should follow the precedent set by courts in every other circuit, and limit the applicability of § 1692f(8) to only those situations where the letters or symbols on the envelope disclose the source and purpose of its contents.  Additionally, Plaintiff further attempts to manipulate the *Douglass* holding by ignoring the fact that a third party must engage in illegal activity to access the embedded data, a process which is actually more laborious and involved, but ultimately tantamount, to tearing open an envelope and reading the enclosed correspondence.

The barcode visible on the exterior of Plaintiff's envelope is a benign symbol because it does not suggest anything about the contents of the enclosed correspondence.  Without the benefit of a barcode scanner, the barcode cannot convey any information; it is simply meaningless black and white markings.  Furthermore, the appearance of a barcode on the exterior of the plain white envelope does not suggest anything about the source or purpose of the enclosed letter.  Like *Gonzalez*, there is nothing on Plaintiff's envelope that would distinguish it from any other piece of junk mail in Plaintiff's mailbox.  *See Gonzalez*, 2013 U.S. Dist. LEXIS 87660 at **15-16.  Even when scanned, the embedded information does not reveal ARS' name, or anything about the contents of the envelope or suggest that what is inside the envelope "pertain[s] to debt collection."  *See Goswami*, 377 F.3d at 494; *Strand*, 380 F.3d at 319; *Masuda*, 759 F.Supp. at 1466; *Lindbergh*, 846 F.Supp. at 180.  Therefore, the appearance of a barcode on

14

the exterior of a plain white envelope cannot violate the FDCPA.  Thus, ARS is entitled to a

judgment on the pleadings, with Plaintiff's Amended Complaint being dismissed with prejudice.

## III.    THE IMPOSITION OF LIABILITY DUE TO ILLEGAL ACTION BY A THIRD PARTY IS INAPPROPRIATE.

As noted above, the only way to view the information stored in the barcode at issue

requires illegal action by a third party, making the imposition of liability under the FDCPA

inappropriate.  In its *Waldron* opinion, the Eastern District of Pennsylvania acknowledged that,

"once [a letter] is placed in the U.S. Mail, the collection letter may not be 'scanned' with

impunity," further protecting the information stored in the barcode.  *Waldron*, 2013 U.S. Dist.

LEXIS 34402 at *10.  Federal law prohibits individuals from taking another's mail with the

specific intent to obstruct correspondence or pry into the business or secret of another, 18 U.S.C.

§1702, which extends to actions such as scanning a barcode on another person's mail.  This

protection continues until the time the mail is delivered to the addressee (not just to his mailbox)

or his authorized agent.  *Id.*  Moreover, U.S. postal workers are allowed to "exhibit mail to the

addressees only," eliminating the possibility of a private individual legally intercepting an

envelope and scanning a barcode.  *United States Postal Service, Handbook M-41: City Delivery

Carriers Duties and Responsibilities* 131.34 (2001).  Thus, a private citizen cannot legally scan a

barcode on the exterior of an envelope, much less legally access the information stored in the

barcode.

U.S. postal workers are also prohibited from taking any actions which would allow them

to legally view the information stored in the barcode.  Only U.S. postal workers are allowed to

handle the mail, and even then, federal law prohibits those employees from tampering with the

mail.  18 U.S.C. §1703.  Mail tampering includes detaining, destroying, delaying, or opening any

letter or other mail.  *Id.*  Postal workers are also prohibited from searching, inspecting, reading,

or disclosing information obtained from the mail or its contents. *United States Postal Service, Administrative Support Manual* 274.21 (2005). Postal workers who tamper with the mail or violate these postal regulations are subject to administrative discipline or criminal prosecution. *Burrell v. Runyon*, No. 95-253, 1996 U.S. Dist. LEXIS 8656, #2 (S.D. Ala. June 7, 1996). Mail is also protected from search by postal workers under the Fourth Amendment. *See United States Postal Service, Administrative Support Manual* 274.41. Courts have thus ruled that an x-ray scan of mail constitutes a Fourth Amendment search. *See United States v. Napan*, 769 F. Supp. 2d 969, 971 (E.D. Va. 2011).

Although the possibility that a private individual would break the law, intercepting an envelope and scanning the barcode, does exist, the imposition of liability on ARS due to the possibility a third party would break federal law is inappropriate. Just as an individual could intercept any other piece of mail, open the envelope, and read an enclosed collection letter, the possibility exists that an individual could illegally scan a visible barcode. However, just as a debt collector would not be held liable for the release of information contained in the written correspondence that would otherwise violate the FDCPA, it would be inappropriate to impose liability for the information discovered by any other type of illegal tampering with the mail, including the scanning of a barcode.

Moreover, the process of scanning the barcode is quite involved if an individual did illegally come into contact with an envelope displaying a barcode. To access the embedded data, a third party would first have to obtain a device capable of reading barcodes. Then, the third party would have to purchase, download, and install software capable of reading barcodes. The third party would then have to scan the barcode, in violation of federal law, by carefully positioning the scanning device over the barcode and instructing the device to read the barcode.

However, even if scanned, the information displayed would simply be a jumble of letters and numbers, lacking any meaning outside the context of sorting return mail. Discerning any meaning from the allegedly displayed information is impossible even regardless of the difficulty of actually scanning the barcode.[3]

The previously described physical process of scanning the barcode is very challenging. Even a technologically literate individual would struggle to use a scanner-equipped device and its software effectively; it is often impossible to hold the scanning device still enough for the device to focus and read the barcode. Even if the individual is able to hold the device still, and the device focuses on the barcode, positioning the device the proper distance from the barcode so the device can conduct the scan is still challenging, and often requires many attempts. Such actions would constitute the most aggressive method by which a person could tamper with mail, akin to tearing open the envelope and reading the correspondence inside.

As previously discussed, on its face, the barcode does not reveal any information; it is simply a rectangular-shaped barcode. The only way to discover the information embedded in it is to scan the barcode. Yet, to do so would violate federal law and the regulations cited above. Although a third party could illegally discover the information embedded in the barcode, just as a

---

[3] A recent post-*Douglass* opinion out of the Northern District of Illinois summarily rejected the argument that the presence of an internal tracking number could violate section 1692f(8). *Sampson v. MRS BPO, LLC*, Civil Action No. 15 C 2258, 2015 U.S. Dist. LEXIS 32422 (N.D. Ill. Mar. 17, 2015). The *Sampson* court described the section 1692f(8) claim, arising from the presence of an internal tracking number visible on the exterior of the envelope, as "a bad joke – a joke because the claims are so patently absurd, and a bad one because $400 has been wasted on a filing fee." *Id.* at *2. The court opined a member of the public would have to possess "x-ray vision that enabled him or her to read the letter contained in the sealed and assertedly offending envelope" to determine the contents of the enclosed correspondence, because "absent that, any deciphering of the impenetrable string of numbers and symbols on the outside of the… envelope would have to depend on some sort of divination." *Id.* at *3. The court further stated the allegations in the complaint were "simply not the stuff of which any legitimate invocation of the Act or its constructive purposes [could] be fashioned." *Id*

third party could open or otherwise tamper with a letter from a debt collector, such an action does not constitute a violation of the FDCPA by the debt collector.  Where the debt collector has not independently violated the FDCPA, the imposition of liability is inappropriate.  Therefore, because the barcode does not provide any information unless illegally accessed by a third party, the inclusion of the barcode cannot constitute a violation of the FDCPA.

## **CONCLUSION**

Based on the foregoing, Defendant ARS respectfully requests this Court grant its motion for judgment on the pleadings, and dismiss Plaintiff's Amended Complaint with prejudice.


Dated:  September 2, 2015

Respectfully Submitted,

/s/ Louis M. Ursini, III
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940
Rebecca M. Harris, Esq.
Florida Bar No. 104963
ADAMS AND REESE LLP
101 East Kennedy Blvd, Suite 4000
Tampa, Florida 33602
Tel:  (813) 402-2880
Fax: (813) 227-5627

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the following are either listed to receive Notices of Electronic Filing through CM/ECF or a true and correct copy of the foregoing was sent via First Class Mail on this day:

John Herrera, Esq.
1801 Ponce de Leon Blvd.
Coral Gables, FL 33134
Email:  service@johnherreralaw.com
Counsel for Plaintiff

/s/ Louis M. Ursini, III
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940