# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Case No.: 1:15-cv-22580-KMW

EFRAIN MARTELL
*on behalf of himself and all others
similarly situated*.

        Plaintiff,

v.

ARS NATIONAL SERVICES, INC. a
Foreign Limited Liability Company

        Defendant(s)

_____/


## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS


By**:   /s/ *JOHN HERRERA*   **

    JOHN HERRERA, Esq.

    F.B.N.: 0636320

    1801 Ponce De León Boulevard

    Coral Gables, FL 33134

    Tel. (305) 446-1504

    Fax (305) 446-1505

    Attorney for Plaintiff(s)

# TABLE OF CONTENTS

Table of Contents ....................................................................................ii

Table of Authorities................................................................................ iii

Procedural History and Statement of Facts .....................................................1

Question Presented ...................................................................................1

Applicable Standard..................................................................................1

Argument..............................................................................................2

   1.  There is no basis for creating a benign language exception. ..............2

   2.  The Barcode is not benign. .............................................3

   3.  The Third Circuit has held that the relevant inquiry is whether
       the debt collector's disclosure has the potential to cause harm.........5

   4.  Nonetheless, the postal regulations do not ensure that Plaintiff's
       personal information will be protected............................................7

   5.  Scanning a barcode can be done quickly and easily.........................8

   6.  The cases Defendant relies on were either wrongly decided
       or are distinguishable. ....................................................9

      a.  *Waldron v. Professional Medical Management*....................10

      b.  *Douglass v. Convergent Outsourcing (trial court)* ................12

      c.  *Johnson v. NCB Collection Services*......................................12

Conclusion ..........................................................................................14

Certificate of Service..............................................................................16

Certificate of Compliance with L.R. 7.8(B) ................................................16

## **TABLE OF AUTHORITIES**

### **Cases**

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007)...................................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006) ............................................................................2

*Caprio v. Healthcare Revenue Recovery Grp., LLC*,
709 F.3d 142, 146-47 (3d Cir. 2013)......................................................1

*Douglass v. Convergent Outsourcing*,
963 F. Supp. 2d 440 (E.D. Pa. 2013) *vacated,* 765 F.3d 299 (3d Cir.
2014) ....................................................................................3, 9, 12

*Johnson v. NCB Collection Servs.*,
799 F.Supp. 1298 (D. Conn. 1992) ......................................................9

*Peter v. GC Servs. L.P.*,
310 F.3d 344 (5th Cir. 2002) .............................................................3

### **Statutes**

15 U.S.C. § 1692............................................................................1, 3, 6, 10

18 U.S.C. § 1702 ................................................................................10

18 U.S.C. § 1703 ................................................................................10

### **Other Authorities**

Domestic Mail Manual Section 508.1.5.1.4.1 ..........................................·8

Financial Crimes Enforcement Network,
IDENTITY THEFT — TRENDS, PATTERNS, AND TYPOLOGIES
REPORTED IN 3 SUSPICIOUS ACTIVITY REPORTS, (2010)
………………………………………….......................................7

iii

United States Postal Service, Handbook M-41: City Delivery Carriers
Duties and Responsibilities 131.34 (2001) .................................................6

**THIS SECTION INTENTIONALLY LEFT BLANK**

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On June 11, 2014, Defendant mailed Plaintiff a debt collection letter. Visible through the envelope was a barcode ("the Barcode"). The Barcode, which can be scanned with a wide variety of readily accessible smartphone applications, displays Plaintiff's account number when it is scanned. As a result of this improper communication, Plaintiff filed this lawsuit in Eleventh Judicial Circuit Court, in and for, Miami-Dade County, Florida. Plaintiff alleged that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), by making the Barcode visible through a glassine window of an envelope.

Defendant removed and filed an answer. Defendant then filed a motion for judgment on the pleadings, as well as a supporting memorandum of law. Plaintiff now files this brief in opposition.

## QUESTION PRESENTED

1.      Whether a debt collector violates the FDCPA when it discloses a debtor's account number in a barcode which is visible on the face of an envelope.

**Suggested answer:** Yes, the Third Circuit has expressly held that a debt collector may not disclose personal information on the face of a collection envelope, because making such a disclosure exposes the debtor to potential harm.

## APPLICABLE STANDARD

"[A] motion for judgment on the pleadings based on the theory that the Plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146-47 (3d Cir. 2013). A court may only grant a motion to dismiss for failure to

state a claim under Rule 12(b) (6) if, after viewing them in the light most favorable to the Plaintiff, Plaintiff is not entitled to relief." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Plaintiff is only required to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). Thus, the ultimate inquiry for a 12(b) (6) motion is "not whether a Plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." *Ballentine*, 486 F.3d at 810.

## ARGUMENT

Defendant's argument is heavily based on the likelihood that someone will intercept a debtor's piece of mail and thereafter obtain the debtor's account number. However, Defendant is focused on the wrong issue. Rather, the correct focus is whether disclosing a debtor's account number creates a *potential* for harm and violates the CPA. As the Third Circuit has already addressed this issue, Defendant's argument is without merit. However, even if Defendant's argument *could* prevail, its motion should still be denied, because the potential for harm exists even if there is no chance that the mail would be intercepted or scanned *prior* to delivery.

Instead the potential for third-party disclosure *after* delivery can also create a risk of harm and a violation of the FDCPA. There is similarly no basis for Defendant's benign language argument, as the Third Circuit has held as a matter of law that an account number is not benign. Nor is Defendant's argument regarding the difficulty of scanning barcodes persuasive. Furthermore, Defendant relies on cases which were either wrongly decided or readily distinguishable.

### 1. *There is no basis for creating a benign language exception.*

Defendant argues that the Court should adopt a benign language exception, which it

2

believes would excuse it from liability here. Plaintiff concedes that a number of courts have found a benign language exception in appropriate circumstances. However, other courts faced with language that was *not* benign, including the Third Circuit, have expressly declined to reach the issue. *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) ("We need not decide whether § 1692 (f)(8) contains a benign language exception because even if such an exception existed, Douglass's account number is not benign."); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351 (5th Cir. 2002) ("We do not need to reach the issue of whether § 1692 (f) (8) implicitly includes an exemption for benign language, since the Defendants' impersonation of the Department of Education is certainly not benign.").

Here, the Court need not consider whether there is a benign language exception, because, as discussed below, the Third Circuit stated that the disclosure of an account number is *not* benign as a matter of law. Thus, the Court should refuse to hold that such an exception is available.

### 2.    *The Barcode is not benign.*

Defendant spends much of its brief discussing whether the Barcode would embarrass Plaintiff by revealing that a debt was owed. (See Doc. 15 pp. 6, 9, 10.) This narrow test is improper in light of the guidance provided by *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014). In *Douglass*, the Defendant argued that including an account number on an envelope was benign, and asked the Third Circuit to adopt a benign language exception. However, rather than reaching the benign language issue, the court stated that "the account number is not meaningless—it is a piece of information capable of identifying Douglass as a debtor. And its disclosure has the potential to cause harm to a consumer that the FDCPA was enacted to address." *Id.* at 305-06. And, the court further held that "the statute not only proscribes

3

potentially harassing and embarrassing language, *but also protects consumers' identifying information.*" *Id.* at 306 (emphasis added).

Defendant argues that the account number "does not contain any of Plaintiff's personally identifiable information." (Doc. 15 p. 3.) This argument is premised on its belief that the account number "has no significance to any individual or entity other than ARS; it is a randomly assigned, internal account number, not related to the original creditor's account number for the account." (Doc. 15 p. 3.)

However, this argument ignores *Douglass*, where the court held that exactly this type of internal account number constituted a consumer's identifying information. *Douglass*, 765 F.3d at 300 (the account number at issue "d[id] not refer or relate to her account with T–Mobile USA."). As discussed above, the *Douglass* court ultimately found that disclosing a debt collector's internal account number violated the FDCPA. The account number here is no different than the account number in *Douglass*, and there is no basis for Defendant's argument that the account number does not constitute Plaintiff's identifying information.

Defendant also ignores the Third Circuit's holding that the FDCPA is designed to protect a consumer's identifying information. Rather, it argues that *Douglass* is inapplicable because there the court was faced with a situation where an account number was visible to the naked eye instead of being stored in a barcode. Thus, Defendant argues that "[w]ithout the benefit of a barcode scanner, the barcode cannot convey any information; it is simply meaningless black and white markings." (Doc. 15 p. 14.).

However, just because a scanner is necessary to read the barcode dos not mean that the information in the code is inaccessible. These barcodes can be easily deciphered by consumers using widely-available free applications for smartphones and iPads and tablets. Many consumers

4

have these applications already installed on their smart devices. Thus, a barcode offers almost no protection, as "many consumers" have the tools necessary to "easily decipher" the barcode. Therefore, it doesn't appear that embedding information in a barcode provides meaningful protection, as the embedded information can be readily obtained. And, because the barcode can be scanned to reveal Plaintiff's account number, *Douglass* is directly on point.

Furthermore, a holding that a debt collector may lawfully store *any* information in an unencrypted bar code would lead to ***absurd results***. For example, a debt collector could make a consumer's entire tax return or credit report available by displaying barcodes such as this  or this . A user who scans these codes will be directed to websites displaying a blank tax return and a sample credit report. The inclusion of this type of information in a bar code would not be benign.

Thus, the lawfulness of a disclosure is determined by the nature of the underlying information, and not by whether that information is contained in a barcode. And, the Third Circuit held that "the statute not only proscribes potentially harassing and embarrassing language, **but also protects consumers' identifying information.**" *Douglass*, 765 F.3d at 306 (emphasis added). Thus, because the Barcode contains Plaintiff's account number, under Third Circuit precedent it cannot be benign. As a result, making it visible through the glassine window violated § 1692(f) (8), and defendant's motion should fail.

### 3. The Third Circuit has held that the relevant inquiry is whether the debt collector's disclosure has the potential to cause harm.

Defendant largely focuses on whether postal regulations adequately protect a debtor's account information from being obtained by a third party scanning the Barcode. However, this

argument is entirely unpersuasive based on the Third Circuit's decision in *Douglass,* and also based on the other prohibitions contained in 15 U.S.C. § 1692(f).

In *Douglass*, the court held that including an account number on an envelope constituted a violation of the FDCPA. None of the postal regulations cited by Defendant, nor any that Plaintiff has been able to find, discuss scanning a letter with a barcode scanner. Thus, the same regulations that apply to this letter with a barcode *also* apply to a letter with a naked account number printed on the envelope.  Nonetheless, the Third Circuit held that sending a collection letter with an account number printed on the envelope constituted an FDCPA violation, even though these postal regulations afford the information some level of protection. As a result, Defendant's reliance on postal regulations cannot be persuasive after *Douglass*.[1]

This same point is further emphasized when the remainder of § 1692(f) is considered. Specifically, this section also prohibits"[c]ommunicating with a consumer regarding a debt by post card." 15 U.S.C. § 1692 (f) (7). This restriction is notable, because the postal regulations Defendant relies on would also apply to a post card. *See* 18 U.S.C. § 1703. Thus, a postal carrier may "exhibit [the post card] to the addressee only." *United States Postal Service, Handbook M-41: City Delivery Carriers Duties and Responsibilities* 131.34 (2001). And, the law would still prohibit an individual from "taking another's mail, [including a post card,] with the specific intent to obstruct correspondence or pry into the business or secret of another . . . ." (Doc. 15 p. 15 (citing 18 U.S.C. § 1702).) Nonetheless, even though these postal regulations would seemingly "protect" information on a post card from being obtained by a third party,

---

[1] In fact, the *Douglass* court apparently considered the postal regulations to be of so little consequence that it did not even mention them in its decision. The court was almost certainly aware of these regulations because they regulations were discussed at length in the *Waldron* decision, discussed *infra*, which was cited by the *Douglass* court.

6

Congress still felt the need to impose severe regulations stringently limiting the use of post cards by debt collectors. Thus, it seems clear that Congress did not consider the postal regulations to be a sufficient method of protecting consumer information.

Rather, Defendant's entire argument regarding postal regulations is simply a red herring. As the Third Circuit has held, disclosing an account number "has the *potential* to cause harm to a consumer that the FDCPA was enacted to address." *Douglass*, 765 F.3d at 306 (emphasis added). Thus, the magnitude of that potential is entirely irrelevant, as Defendant's violation stems from the potential harm that it might cause.

### 4.    Nonetheless, the postal regulations do not ensure that Plaintiff's personal information will be protected.

Even if Defendant's argument regarding postal regulations was persuasive, and those regulations protected Plaintiff's personal information from disclosure while the mail was being transported, Defendant's motion should still be denied, because of the risk that Plaintiff's personal information could be obtained *after* the mail has been delivered by the post office. Defendant's entire argument regarding postal regulations focuses on the likelihood of third parties scanning the letter while the letter is still in the custody of the United States Postal Service. But, this focus ignores the possibility that the identity theft could occur in the debtor's own home.

According to the Financial Crimes Enforcement Network, in over 25% of suspicious activity reports relating to identity theft, "the identity theft victim knew the suspected thief, who was usually a family member, friend, acquaintance, or an employee working in the victim's home." Financial Crimes Enforcement Network, IDENTITY THEFT — TRENDS, PATTERNS, AND TYPOLOGIES REPORTED IN 3 SUSPICIOUS ACTIVITY REPORTS, available at

7

http://www.fincen.gov/news_room/rp/reports/pdf/ID%20Theft.pdf at p. 4 (2010), last visited September 19, 2015. This statistic is not surprising, as these categories of people often have far more access to the victim's personal information than a random third-party would have. And, Defendant's conduct creates a risk that these people could obtain a debtor's account information while still complying with all relevant postal regulations.

Section 508.1.5.1.4.1 of the Domestic Mail Manual states that "an addressee's mail may be delivered . . . to a competent member of the addressee's family . . . ." Thus, a collection letter could be delivered to a debtor's family member, instead of to the debtor herself.  Once the letter has been delivered, the barcode is susceptible to being scanned. And, it is quite possible that the debtor will have no idea that the barcode was scanned because, unlike the situation where a letter is physically opened, a mere scan leaves no visible trace on the envelope. Thus, even if the Court is inclined to weigh the likelihood that a third-party will actually obtain Plaintiff's personal information, Defendant's motion should still be denied.

### 5.   *Scanning a barcode can be done quickly and easily.*

Also in its brief, Defendant argues that "the process of scanning a barcode is quite involved." (Doc. 15 p. 16.) Defendant then identifies three steps that it contends must be completed before a barcode can be scanned. Specifically, Defendant states that a person must (1) "obtain a device capable of reading barcodes[,]" (2) "purchase, download, and install software capable of reading barcodes[,] and (3) "scan the barcode…by carefully positioning the scanning device over the barcode and instructing the device to read the barcode." (Doc. 15 p. 16-17.) After these steps have been performed, Defendant admits that "the device would then display the information embedded in the barcode." (Doc. 15 p. 17.) This argument does not entitle Defendant to prevail on this motion.

8

Initially, Defendant's argument is inappropriate, as these barcodes can be easily deciphered by consumers using widely-available free applications for smartphones and other devices. Many consumers have these applications already installed on their smart phones to enable them to access [other information]. Here, Defendant's argument is inappropriate. The Court must presume that barcode scanners are (1) readily available, (2) available for free, and (3) capable of easily deciphering barcodes.

However, even if Plaintiff is not entitled to this presumption, Defendant's argument should still fail because it is factually erroneous. First, according to the Pew Research Center, 64% of American adults owned a smartphone as of October 2014. http://www.pewinternet.org/factsheets/mobile-technology-fact-sheet/, last visited September 19, 2015. Thus, for the vast majority of Americans, there is no need to obtain a device capable of reading a barcode, because those individuals *already* have a device that can perform this function. In addition, many individuals already have barcode scanners installed, and there are many free barcode scanners available. Furthermore, using a barcode scanner is extremely easy, and a barcode can often be scanned in a matter of seconds—and at worst the ease of scanning a barcode is a factual issue which must be construed in Plaintiff's favor. Thus, Defendant's argument regarding the difficulty of scanning a barcode is erroneous, and Defendant is not entitled to prevail on its motion.

### 6. *The cases Defendant relies on were either wrongly decided or are distinguishable.*

Defendant relies primarily on three district court cases—*Waldron v. Professional Medical Management*, 2013 WL 978933 (E.D. Pa. March 13, 2013); *Douglass v. Convergent Outsourcing*, 963 F. Supp. 2d 440 (E.D. Pa. 2013) *vacated*, 765 F.3d 299 (3d Cir. 2014); and

*Johnson v. NCB Collection Servs.***,** 799 F.Supp. 1298 (D. Conn. 1992)[2]. However, for the reasons discussed below, these cases were either wrongly decided or easily distinguishable.

### a. *Waldron v. Professional Medical Management.*

In *Waldron*, the court held that a barcode[3] did not violate § 1692 (f) (8). However, as discussed below, *Waldron* was wrongly decided. The first error in *Waldron* was its adoption of the benign language exception. The court reached this decision because it believed that "[t]he placement of innocuous symbols or words on a collection envelope is not an evil the [FDCPA] was intended to prevent." *Id.* at *3. However, this interpretation contravenes the plain language of the FDCPA, because § 1692 (f) (8) *does* prevent debt collectors from placing extraneous information on a collection letter—a restriction that is so strong that it actually prohibits a debt collector from even putting its own name on an envelope in certain circumstances[4]. And, if the *Waldron* court was correct, then barcodes such as those discussed above on page 8 would be permissible. Thus, the *Waldron* court erred when it adopted the benign language exception. *Waldron* also held that "a [barcode] is simply a pattern of black and white markings shaped into a square. [And] the un-scanned [code] here does not 'reveal the source or purpose of the enclosed letter.'" *Id.* at 4 (quoting *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 319 (8th Cir. 2004)). As a result, it found that the barcode itself was benign and did not violate the FDCPA. However, it appears clear that the court made this holding because the barcode wouldn't

---

[2] Defendant also briefly discusses a recent decision from the Northern District of Illinois, *Sampson v. MRS BPO, LLC*. However, this case has no relevance in this circuit. Rather, in *Sampson* the court *sua sponte* rejected the argument that making an account number visible through a window constituted an FDCPA violation. Obviously this holding is inconsistent with *Douglass*, and the Court should give *Sampson* absolutely no weight.

[3] The barcode in *Waldron* was a specific type of barcode called a QR code. However, the analysis in *Waldron* should apply equally to traditional barcodes.

[4] *See e.g.*, 15 U.S.C. § 1692 (f) (8).

embarrass the consumer since the code did not reveal that the letter was from a debt collector. This holding is now inconsistent with *Douglass*, where the court held that "the statute not only proscribes potentially harassing and embarrassing language, but also protects consumers' identifying information." *Douglass*, 765 F.3d at 306.

Also troubling was the holding that the *contents* of the barcode were not "visible on the face of the envelope" because the court believed that "however common scanners may be, the law and regulations concerning the handling and security of mail would make the unauthorized scanning Plaintiff envisions difficult at best and likely illegal at worst." *Id.* at 5. The court reached this holding after a lengthy discussion on how postal workers are prohibited from "detaining, destroying, delaying, or opening any letter or other mail." *Id.* Thus, the court improperly focused on the likelihood of third parties scanning the code and obtaining the information. Rather, as *Douglass* demonstrates, simply making the information available is enough to constitute an FDCPA violation, irrespective of whether it is obtained and used by third parties. And, as discussed above, the postal regulations do not protect the barcode from being scanned.

Finally, the *Waldron* court held that even if the account number was visible to the naked eye, the disclosure would still violate the statute. The court so held, because it felt that "[t]he embedded data is a seemingly random series of letters and numbers that only Defendant can decipher. Its inclusion on the envelope's face thus does not violate the [FDCPA]." *Id.* This last holding must, of course, be disregarded after *Douglass*, as the court specifically held that

11

including an account number on an envelope violated the FDCPA[5] . In addition, *Douglass* held that the FDCPA also protected a consumer's identifying information, while the *Waldron* court was only focused on whether the item printed on the envelope would reveal the true nature of the communication. Thus, the Third Circuit has expressly disagreed with both of the holdings made by *Waldron* that it has had the opportunity to address. This is a strong indication that *Waldron* should be given very little weight after *Douglass*[6].

### b. *Douglass v. Convergent Outsourcing* (trial court)

The second case relied on by Defendant is the trial court's decision in *Douglass*. This decision was ultimately reversed by the Third Circuit on appeal. However, on appeal the Plaintiff did not pursue her argument that including a barcode on an envelope violated the FDCPA. Defendant therefore champions the trial court's decision as supporting its position. But, like *Waldron*, the trial court's decision in *Douglass* is ripe for attack, and was expressly overruled on all of the issues presented on appeal. And, the only issue that was not presented—the barcode issue— is closely related to the ultimate holding on appeal that including personal information on an envelope violates the FDCPA. There is simply no longer any reason to think that this portion of the district court opinion is correct.

### c. *Johnson v. NCB Collection Services.*

---

[5] In *Douglass*, there was no indication that the account number at issue was actually an account number. Rather, it could have also been interpreted to the uninformed reader as being simply a "seemingly random string of letters and numbers."

[6] Defendant also argues that the Third Circuit demonstrated "tacit approval" of *Waldron's* adoption of the benign language exception, including its applicability to barcodes containing personal information. (Doc. 9 p. 17.) However, this representation is far from accurate. *Waldron* was only mentioned in *Douglass* once, and only in a footnote where the court simply stated that "[s]everal district courts have adopted benign language exceptions . . . ." and then provided a string citations. *Douglass*, 765 F.3d at 304 n.6. This footnote is far from the ringing endorsement that Defendant contends the Third Circuit gave to *Waldron*.

Defendant also relies on *Johnson*, which has almost no relevance to the present matter. In *Johnson*, the debt collector, *inter alia*, provided a *return* envelope for the consumer to use when mailing back a payment. On this return envelope was "encoded information" about the debtor. *Id.* at 1301. The consumer alleged that including this information on the return envelope violated the FDCPA.

The court disagreed, as the debtor would have been the one to mail the return envelope. Thus, the court held that if the consumer "was concerned that damage to his reputation could result if third parties discovered his dealings with collection agencies via the pre- printed return envelopes, [the consumer] could have easily substituted his own unmarked envelope for his return correspondence with [the collector]." *Id.* at 1305. While the court did note that it was "hardly apparent" that anyone could have deciphered information about the debt from this return envelope, this statement was simply dicta and does not support Defendant's position after *Douglass*.

As a result, *Johnson* is not relevant, as here the operative letter was mailed by Defendant. Thus, the Court should disregard *Johnson*.

**THIS SECTION INTENTIONALLY LEFT BLANK**

13

## CONCLUSION

The Court should decline Defendant's invitation to establish a benign language exception. However, even if the Court believes a benign language exception is appropriate, the exception should not apply here. Despite Defendant's arguments, the Third Circuit has held that the relevant section of the FDCPA is designed not only to protect a debtor from the disclosure of embarrassing information, but also to afford protection to a debtor's personal information. As a result, after *Douglass* the Barcode is not benign as a matter of law because it disclosed Plaintiff's account number. Thus, the disclosure was not permissible because it exposed the debtor to a potential harm.

Defendant's whole argument regarding postal regulations is also not persuasive. Initially, the test is whether the disclosure creates the *potential* for harm—not whether the harm actually occurs. And, as the Third Circuit did not consider these postal regulations to be sufficient to shield the disclosure in *Douglass*, there is no reason to believe they are sufficient here. Furthermore, Defendant ignores the widespread prevalence of identity theft by household members. The postal regulations do not protect a debtor from having a member of her household scan a barcode and obtain the debtor's personal identifying information. Furthermore, because a debtor will not know if a barcode is scanned, she will be far less likely to know that her identity has potentially been compromised through the barcode.

Defendant also asks the Court to ignore Plaintiff's well-pled allegations regarding the prevalence of barcode scanners and the ease with which they can be used. However, at this stage of the litigation the Court must accept Plaintiff's allegations as true, and Defendant's argument on this point must fail.

14

Finally, Defendant relies on cases which were wrongly decided or are easily distinguishable. *Waldron* and the district court opinion in *Douglass* are inconsistent with Third Circuit precedent. It is true that the Third Circuit has never addressed the precise question of whether a barcode containing an account number violates the FDCPA. However, there is no reason to think that the Third Circuit's discussion in *Douglass* regarding the protection of a consumer's identifying information would be inapplicable merely because the information is contained in a barcode. And, as discussed above, *Johnson* is entirely irrelevant.

Thus, for the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for judgment on the pleadings.


Respectfully Submitted by:

/s/ JOHN HERRERA
John Herrera, Esq




**THIS SECTION INTENTIONALLY LEFT BLANK**

15

## <u>CERTIFICATE OF SERVICE</u>

Service is being effectuated via the CM/ECF system.

Law Office of John Herrera, P.A.
1801 Ponce de Leon Blvd
Coral Gables, FL 33134
Telephone: 305.446.1504
Facsimile: 305.446.1505
service@johnherreralaw.com

By:        <u>/s/ JOHN HERRERA</u>
               John Herrera, Esq

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(B)</u>

The undersigned verifies that the substantive portion of this brief contains 4,497 words. I

have relied on the word count feature of the word-processing program used to prepare the brief.

Law Office of John Herrera, P.A.
1801 Ponce de Leon Blvd
Coral Gables, FL 33134
Telephone: 305.446.1504
Facsimile: 305.446.1505
service@johnherreralaw.com

By:        <u>/s/ JOHN HERRERA</u>
               John Herrera, Esq.

16