UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

EFRAIN MARTELL,
on behalf of himself and all others
similarly situated
    Plaintiff,

vs.                                    CASE NO. 15-22580-CIV-WILLIAMS

ARS NATIONAL SERVICES, INC.,
    Defendants.
_____/

**DEFENDANT ARS NATIONAL SERVICES, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.    Introduction**

Defendant ARS National Services, Inc. ("ARSN"), by and through counsel, respectfully requests that this Court grant its Motion for Judgment on the Pleadings (the "Motion"). Plaintiff's Memorandum in Opposition ("Opposition") ignores the abundance of case law that has declined to follow the Third Circuit's holding in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014). Additionally, Plaintiff ignores the fact that the Third Circuit specifically refused to address whether a bar code violated 15 U.S.C § 1692, *et seq.* ("FDCPA"). Based on this faulty analysis, Plaintiff insists that this Court should apply a "potential to cause harm" standard that has never been adopted by any court in the context of a FDCPA claim.

The issue of whether the bar code on Plaintiff's June 11, 2014 collection letter violated the FDCPA is a question of first impression for this Court. Although the Third Circuit's opinion in *Douglass* may be persuasive, it should not be considered in a vacuum, and should instead be read in conjunction with all the other courts who have considered this issue. Thus, because

1

*Douglass* is an outlier, and the vast majority of courts have distinguished it or simply refused to follow it, this Court should also find that *Douglass* does not apply to the facts of this case. Instead, as ARSN has previously argued, this Court should adopt a benign language and symbols exception to the FDCPA, and find that a bar code, as a matter of law, is an innocuous symbol that provides no indication that the contents of the envelop pertain to debt collection.

**II.     *Douglass* is not binding on this Court and should not be followed**

Plaintiff makes several statements throughout his Opposition that indicate that this Court is somehow bound by the *Douglass* decision. Plaintiff states that because ARSN urged the Court to ignore *Douglass'* holding and find that the account number does not violate the FDCPA, there is no legal basis for our argument. (Doc. 20 at pg. 4). Additionally, Plaintiff refuses to address cases that were decided outside of the Third Circuit. For instance, Plaintiff claims that the Northern District of Illinois' holding in *Sampson v. MRS BPO, LLC* has no "relevance in this circuit" and that the Court should ignore its holding because it is inconsistent with *Douglass* and thus holds "absolutely no weight." (Doc. 20 at pg. 10, n. 2). It is completely unclear why Plaintiff believes that Third Circuit cases are somehow more relevant to a court in the Eleventh Circuit than those from the Second Circuit, Fifth Circuit, Seventh Circuit and Eight Circuit. Rather, it is up to this Court to decide what weight to give opinions from other circuits. In this light, Plaintiff's argument that this Court should follow *Douglass,* without any explanation of why, is clearly deficient.

All the cases that Plaintiff refused to address in his Opposition because they have "no relevance in this circuit," provide ample support for granting Defendant's Motion for Judgment on the Pleadings. Although we have mentioned it before it bears repeating – only a single district court outside of the Third Circuit has relied on *Douglass* to find a violation of the

FDCPA. Even within the Third Circuit, only a single district judge has extended *Douglass'* holding to bar codes. *See Styer v. Prof.'l Med. Mgmt., Inc.*, NO. 3:14-CV-2304, 2015 U.S. Dist. LEXIS 92349 (M.D. Pa. July 15, 2015); *Kostik v. ARS National Services, Inc.*, NO. 3:14-CV-2466, 2015 U.S. Dist. LEXIS 95230 (M.D. Pa. July 22, 2015). Every other court who has addressed *Douglass* has found that it either misapplied the law, or is distinguishable. *See Gonzalez v. FMS, Inc.*, Civil Action No. 14-9424, 2015 U.S. Dist. LEXIS 87660, *17 (N.D. Ill. July 6, 2015); *Lucienna Gelinas v. Retrieval Masters Creditors Bureau, Inc.*, No. 15-cv-116, (W.D.N.Y. July 22, 2015); *Perez v. Global Credit and Collection, Corp.,* No. 1:14-cv-09413-CM, 2015 U.S. Dist. LEXIS 98692 (S.D. N.Y., July 27, 2015) (*Douglass* court's conclusion was "simply *ipse dixit,* unsupported by any analysis")*; Sampson v. MRS BPO, LLC*, Civil Action No. 15-C-2258, 2015 U.S. Dist. LEXIS 32422 (N.D. Ill. Mar. 17, 2015) (describing a *Douglass* 1692f(8) claim as "a bad joke – a joke because the claims are so patently absurd, and a bad one because $400 has been wasted on a filing fee."); *Schmid v. Transworld*, No. 15-C-02212, 2015 U.S. Dist. LEXIS 118708 (N.D. Ill. Sept. 4, 2015) (rejecting *Douglass* and finding that a non-communicative sequence of letters and numbers does not raise a concern of unfairness or unconscionableness because an unsophisticated consumer would not perceive a string of otherwise nonsensical letters and numbers on Plaintiff's envelope as connected to debt collection).

As these other courts have explained, the *Douglass* court seemed to have missed a step in their analysis. *See Perez*, 2015 U.S. Dist. LEXIS 98692 at *9. Instead of analyzing whether the collection letter could in anyway identify the plaintiff as a debtor, the Third Circuit simply jumped from the conclusion that the account number implicated a core concern of the FDCPA to finding that the account number disclosed Plaintiff's private financial information. *Douglass*,

3

765 F.3d at 303. The *Douglass* court completely ignored that the account number, by itself, did not disclose any information. When viewed by anyone without access to the debt collector's internal system, the account number appeared to be a random string of numbers unaffiliated with anything in particular. As one court in the Second Circuit explained:

> [T]he plaintiff's eight digit account number with Global is meaningless to anyone other than someone at Global Credit. The number could be a bank account number, a subscription number, or any other sort of identification number. Even the fact that it is an account number says nothing about whether the plain white envelope contained a debt collection communication, as opposed to a renewal notice, a special offer to customers, or any of the other myriad junk mail communications that arrive in plain white envelopes with glassine windows on a daily basis in the mailboxes of America.

*Perez*, 2015 U.S. Dist. LEXIS 98692 at *10 – 11.

Additionally, Plaintiff cites *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002) in support of his argument that several courts have declined to reach the issue of whether section 1692f(8) contains a benign language exception. (Doc. 20 at pg. 3). Plaintiff's reliance on *Peter*, however, is misplaced. Not less than two years after *Peter* was decided, the Fifth Circuit returned to the question of whether the FDCPA precludes benign language or symbols and emphatically held that it did. *Goswami v. Am. Collections Enter.*, 377 F.3d 488 (5th Cir., 2004) ("Given this persuasive authority, we are convinced that the FDCPA does not bar the innocuous "priority letter" markings in this case . . . it appears that all courts that have considered this issue have adopted a benign language exception to § 1692f(8) . . . ."). Thus, not only does Plaintiff encourage the Court to ignore any other case outside of the Third Circuit – for apparently no real reason besides the fact that they do not support his argument – but Plaintiff manipulates case law to convince this Court that there is a Circuit split where this issue has largely been resolved.

As the Fifth Circuit noted in their *Goswami* opinion, every court that has addressed this issue has found that the FDCPA contains a benign words and language exception. *Id.* at 494.

4

Finding otherwise would lead to bizarre and impracticable consequences. If § 1692f(8) is applied "as written," then nothing, without exception, may be included on an envelope other than a debt collector's address. A strict reading of the statute would prohibit 1) a stamp (especially if the stamp has on its face anything other than the amount of the postage, e.g., a Martin Luther King, Jr. or Abraham Lincoln commemorative), 2) a return address, or 3) even the name and address of the person to whom the letter was sent. Therefore, "every court given the opportunity has created a benign language exception to this subsection, under which a defendant only violates § 1692f(8) if the markings on the envelope 'signal that 302095000 it is a debt collection letter, [or] tend to humiliate, threaten, or manipulate [the] debtor.'" *Douglass v. Convergent Outsourcing*, 2013 U.S. Dist. LEXIS 110708, *7 (E.D. Pa. 2013), *rev'd on other grounds,* 765 F.3d 299 (3d Cir. 2014) (quoting *Goswami*, 377 F.3d 488, 493 (5th Cir. 2004)).

This is not just a judicial construct. Even the Federal Trade Commission has advised that the statute was not intended to preclude "harmless words or symbols" on envelopes. FTC Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,108 (Dec. 13, 1988). Markings on the exterior of an envelope are generally considered 'harmless' where the symbol "does not 'reveal the source or purpose of the enclosed letter.'" *Waldron*, 2013 U.S. Dist. LEXIS 34402 at *9 (citing *Strand*, 380 F.3d at 319; *Lindbergh*, 846 F. Supp. at 180). Thus, the bar code visible on the exterior of Plaintiff's envelope is a benign symbol because it does not suggest anything about the contents of the enclosed correspondence.

### III. *Douglass* Never Addressed Whether the Presence of a Bar Code Violates the FDCPA

Even if this Court does find the holding of *Douglass* persuasive, the facts of this case are distinguishable because *Douglass* only addressed whether an account number violated the

5

FDCPA. *Douglass* never addressed whether a bar code also violated the FDCPA. In fact, *Douglass* affirmatively declined to address the issue, and refused to consider whether the QR code on the plaintiff's collection letter should be held to the same standard as the account number. *Douglass*, 765 F.3d at 301, n. 4 ("Douglass no longer presses her argument that Convergent violated the FDCPA by including the QR Code on the envelope . . . We therefore do not decide that issue."). Thus, Plaintiff's statement that "there is no basis for Defendant's argument that the account number does not constitute Plaintiff's identifying information," fails to take into account that *Douglass* never decided this issue. In fact, *Douglass* refused to overrule the Eastern District case of *Waldron v. Professional Medical Management*, No. 12-1863, 2013 U.S. Dist. LEXIS 34402 (E.D. Pa. 2013), which held that the presence of a bar code did not violate the FDCPA. *Id.* ("[T]he embedded data is a seemingly random series of letters and numbers that only [the debt collector] can decipher."). *Waldron* is still good law in the Third Circuit.

By refusing to overrule *Waldron*, the Third Circuit left open the possibility that even in a *Douglass* jurisdiction, district courts could find that bar codes do not violate the FDCPA. Plaintiff's allegations that "the account number here is no different than the account number in *Douglass*," is clearly erroneous and warrants a much deeper analysis.

Indeed, the bar code on the collection letter did not suggest anything about the contents of the enclosed correspondence. A bar code on its own is a jumble of thick and thin lines of differing widths, separated by white space that is incoherent and unintelligible to the naked eye. Unlike an account number, there is nothing inherent in a bar code that would disclose the debtor's personal financial information. The only way to decipher the randomly assigned lines and markings that form the bar code is to scan the code using a bar code scanner specifically designed to read the

type of bar code used on the letter. As discussed at length previously, any such action would require that a third party violate federal law before the barcode disclosed any information whatsoever. *See* 18 U.S.C. § 1702. Even if that occurred, however, it is undisputed that deciphering the bar code only reflects a randomly assigned batch and inventory number placed on the envelope by a mail vendor for processing purposes only. *See* (Doc. 15 at pg. 4). Unlike the alleged QR code in *Douglass,* the information here does not reflect the Plaintiff's creditor's account number, it does not reference ARSN in any way, does not include the amount of debt, does not include any address information, and does not otherwise imply that the contents of the envelope relate to collection activity. *See id.* As a result, it would be impossible to discern that the letter related to debt collection if a third party illegally deciphered the barcode and attempted to research the information obtained. *See also Schmid at \*5 (*the FDCPA shields against markings that intimate to those who glimpse the contents relate to collection efforts, "not anything that could conceivably be used by an inordinately curious and very determined snoop, with the help of extrinsic research, to trace the letter"). As a result, holding ARSN liable for the illegal acts of third parties in this context is no different than finding them liable because an individual could intercept Plaintiff's mail, open the envelope, and read the enclosed collection letter.

**IV.   No Court Has Adopted A "Potential to cause Harm" Standard When Analyzing FDCPA Claims**

Plaintiff also encourages this Court to apply a "potential to cause harm" standard to the facts of this case. According to Plaintiff, this Court should consider whether the information on the envelope has the potential to cause harm, regardless of how unlikely it is that Plaintiff's private financial information will actually be disclosed. (Doc. 20 at pg. 7). Plaintiff alleges that

the Third Circuit developed this standard in *Douglass* when it held that the account number at issue in that case had the potential to cause harm to the plaintiff.

Once again, Plaintiff stretches the case law to fit his own needs.  The phrase "potential to cause harm," is only used once in the entire *Douglass* opinion.  *Douglass*, 765 F.3d at 306.  Even then, the phrase is not used until the second to last paragraph of the opinion, when the Court is simply reiterating their conclusions.  Had the Third Circuit actually adopted a "potential to cause harm standard" they probably would have discussed the substance of what that standard is and how it should be applied somewhere in the opinion.  Notably, this analysis is missing.  Instead, the *Douglass* court held that the FDCPA protects harassing and embarrassing language *as well as* the consumers' financial information.  *Douglass,* 765 F.3d at 306.  In making this finding the court held that the account number violated the FDCPA because "it is a piece of information capable of identifying Douglass as a debtor."  *Douglass*, 765 F.3d at 306.  Thus, *Douglass* did not find that the account number violated the FDCPA because it had the potential to harm the plaintiff, but rather it violated the FDCPA because it identified the plaintiff as a debtor.

Plaintiff pushes the faulty "potential to cause harm standard" – a standard that has not been discussed in any case analyzing the FDCPA – to argue that ARSN's legal analysis of the postal regulations is a "red herring."  (Doc. 20 at pg. 7).  According to Plaintiff, because the bar code on the collection letter has the "potential to harm" Plaintiff, it is irrelevant whether the postal regulations make scanning the bar code illegal.  Plaintiff's argument falls flat once the correct legal standard is applied.  As stated above, the correct inquiry is whether the words or symbols on the collection letter are capable of identifying Plaintiff as a debtor.  Even Plaintiff concedes that the only way to retrieve information from the bar code is if a third party illegally scans the bar code using a bar code scanner specifically designed to read the type of bar code

placed on the collection notice. Thus the fact that federal law prohibits a private citizen from scanning a barcode on the exterior of an envelope and accessing the information stored in the barcode is extremely relevant to our inquiry. *See Waldron*, 2013 U.S. Dist. LEXIS 34402 at *10 ("[O]nce [a letter] is placed in the U.S. Mail, the collection letter may not be 'scanned' with impunity.").

Despite Plaintiff's suggestion, ARSN did not argue that the postal regulations provide sufficient protection from third parties intent on scanning their neighbors' mail. Instead, ARSN argued that the information embedded in the bar code is sufficiently protected because, when viewed with the naked eye, it provides absolutely no account information. It is simply a series of black and white lines. The only way to abstract any information is by violating federal law and scanning the bar code. ARSN concedes that an individual could potential obtain Plaintiff's account number through illegal means – just as an individual could intercept any other piece of mail, open the envelope, and read an enclosed collection letter. However, just because this possibility exists does not make it a violation of the FDCPA. Just as a debt collector would not be held liable for the release of information contained in the written correspondence that would otherwise violate the FDCPA, it would be inappropriate to impose liability for the information discovered by any other type of illegal tampering with the mail, including the scanning of a barcode.

V.  **Conclusion**

ARSN's Motion for Judgment on the Pleadings should be granted because section 1692f(8) of the FDCPA only precludes language or symbols that identify Plaintiff as a debtor. Since a bar code, when viewed with the naked eye, is nothing more than a meaningless set of black and white lines, incapable of providing any information about Plaintiff or his alleged debt,

this Court should find that the June 11, 2014 collection letter was in full compliance with the FDCPA. Moreover, this Court is not bound by the *Douglass* decision. Even if the account number embedded within the bar code was disclosed, it still would not be a violation of the FDCPA because the account number is a random string of numbers that has no meaning to anyone outside of ARSN. For these reasons, ARSN requests that the Court grant Defendant's Motion for Judgment on the Pleadings and dismiss Plaintiff's claims.

Dated: October 19, 2015

Respectfully Submitted,

/s/ Louis M. Ursini, III
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940
Rebecca M. Harris, Esq.
Florida Bar No. 104963
ADAMS AND REESE LLP
101 East Kennedy Blvd, Suite 4000
Tampa, Florida 33602
Tel: (813) 402-2880
Fax: (813) 227-5627

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the following are either listed to receive Notices of Electronic Filing through CM/ECF or a true and correct copy of the foregoing was sent via First Class Mail on this day:

John Herrera, Esq.
1801 Ponce de Leon Blvd.
Coral Gables, FL 33134
Email:  service@johnherreralaw.com
Counsel for Plaintiff

/s/ Louis M. Ursini, III_____
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940