UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 15-22580-CIV-WILLIAMS

EFRAIN MARTELL,
on behalf of himself and all others
similarly situated
      Plaintiff,

vs.

ARS NATIONAL SERVICES, INC.,

      Defendant.
_____/

# DEFENDANT ARS NATIONAL SERVICES, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS ADDRESSING THE UNITED STATES SUPREME COURT OPINION IN SPOKEO v. ROBINS

Defendant ARS National Services, Inc. ("ARS"), by and through its undersigned counsel, hereby submits this supplemental brief addressing the Supreme Court's decision in *Spokeo, Inc. v. Robins*, No. 13-1339 (May 16, 2016) pursuant to this Court's May 20, 2016 Order. In addition to the arguments presented in ARS' Motion for Judgment on the Pleadings, and as set forth more fully below, Plaintiff also lacks Article III standing to bring claims under the FDCPA because he has failed to allege an injury that is "concrete and particularized." Therefore, judgment in favor of ARS and against Plaintiff is warranted, and the Court should grant ARS' Motion for Judgment on the Pleadings and dismiss the Plaintiff's Amended Complaint with prejudice.

## INTRODUCTION

On May 16, 2016, the United States Supreme Court issued its opinion in *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 U.S. LEXIS 3046 (U.S. May 16, 2016) directly addressing Article III standing in the context of a consumer protection statute like the FDCPA. In its holding, the

1

Supreme Court sent a clear message to plaintiffs and their attorneys bringing lawsuits for abstract statutory violations unaccompanied by an injury. The Supreme Court rejected the argument that a mere procedural violation of a statute – on its own – is sufficient to establish Article III standing. Instead, the court held that a plaintiff must also allege an additional harm beyond the one Congress has identified in the statute to meet the constitutionally mandated standing requirement. Using this analysis as a guide, Plaintiff's FDCPA claim must be dismissed because Plaintiff has not alleged that he has suffered any harm as a result of ARS placing a barcode on the June 11, 2014 collection notice. At most, Plaintiff has alleged a mere "procedural violation" of the FDCPA without alleging a corresponding injury. While Plaintiff alleges that disclosure of the ARS account number embedded within the barcode has the potential to identify him as a debtor, he fails to allege that anyone actually scanned the barcode or that his account number was disclosed to a third party. In essence, Plaintiff is seeking redress for a harm that never occurred. As the Supreme Court has recently made clear, such allegations are insufficient to establish Article III standing.

## LEGAL ARGUMENT

### I. Plaintiff Lacks Article III Standing to Bring Claims Under the FDCPA Because He Has Not Suffered a Concrete Injury

The Supreme Court's holding in *Spokeo, Inc. v. Robins*, laid the ground work for determining when plaintiffs have standing to sue under consumer protection statutes like the FDCPA. As explained in *Spokeo*, because Plaintiff has only alleged a procedural violation of the FDCPA, and has failed to allege a corresponding "injury in fact", he lacks Article III standing to sue ARS under the FDCPA.

In *Spokeo*, the plaintiff brought claims against the defendant, an alleged consumer reporting agency, for violating various provisions of the Fair Credit Reporting Act ("FCRA"). *Spokeo*, 2016 U.S. LEXIS 3046 at *9. According to the plaintiff, the defendant operated a website that allowed users to search for information about other individuals. *Id.* at *8. When the defendant was asked to generate a profile on the plaintiff, it released information claiming that the plaintiff was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree. *Id.* at *9. The plaintiff alleged, however, that none of this information was true, and that the potential release of this inaccurate information violated the FCRA. In response to the plaintiff's allegations, the defendant filed a motion to dismiss arguing that the plaintiff lacked standing because he failed to allege a concrete and personalized injury. The trial court granted the defendant's motion, but the decision was later overturned by the Ninth Circuit. *Id.* at *9 – 10. By the time the case got the Supreme Court, the issue was fairly narrow – whether the plaintiff's "alleged violations of his statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III." *Id.* at 10.

In overturning the Ninth Circuit's holding, the Supreme Court emphatically held that even in the context of a statutory violation, Article III standing requires a concrete injury. *Id.* at *16. The Supreme Court focused on the injury-in-fact requirement of Article III standing – the first and foremost of standing's three elements. *Id.* at *12 (*quoting Steel Co. v. Citizens for better Environment*, 523 U.S. 83, 103 (1998). The court noted that "to establish [an] injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, **not conjectural or hypothetical**." *Id.* at *13 (emphasis added) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (U.S. 1992). According to the Supreme Court, the Ninth Circuit erred in its standing analysis by only focusing

on whether the plaintiff's injuries were particularized, without also focusing on whether they were concrete. *Id.* at *14. The Ninth Circuit missed a critical piece of the standing analysis by failing to address whether the plaintiff suffered an injury as a result of the defendant's allegedly inaccurate consumer report. *Id.* at *14. ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.").

While the Supreme Court recognized that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, it also cautioned that not every statutory violation automatically provides a plaintiff with standing. As the Supreme Court explained:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at *16 (*citing Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (U.S. 2009); *accord Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). Put another way, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*, 555 U.S. at 497. Thus, just because Congress declares that a person who is exposed to an abstract violation of law is entitled to a monetary recovery, does not mean that person has also ipso facto sustained an injury in fact sufficiently concrete and particularized to have standing to sue in federal court. *Id.*

In the context of the FCRA, the Supreme Court noted that it was adopted by Congress "to curb the dissemination of false information by adopting procedures designed to decrease that

4

risk." *Spokeo*, 2016 U.S. LEXIS 3046 at *17. On the other hand, the Supreme Court also recognized that "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at *17 – 18. By way of example, the Supreme noted that "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information," that information may be entirely accurate, and result in no harm, regardless of the technical violation of the statute. *Id.* at 18. Likewise, the court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.*

Similarly, federal courts have consistently interpreted the FDCPA as requiring more than a mere technical violation. While the issue has not been framed in the context of standing, a review of the case law shows that the Supreme Court's holding in *Spokeo* is merely an extension of how the FDCPA has already been interpreted by the lower courts. For example, in *Jensen v. Pressler & Pressler*, the Third Circuit held that "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor . . . ." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3rd Cir. 2015). Thus, even where a debt collector technically violates the FDCPA, if the false statement would not mislead the consumer – or as explained in *Spokeo* cause a "concrete injury" – there is no violation. *Id.*; *see also* Hahn v. Triumph P'ships LLC, 557 F.3d 755, 758 (7th Cir. 2009). Similarly, when analyzing claims under § 1692f(8), almost every court in the country applies a "benign words and symbols" exception, which precludes debt collectors from being held liable under the FDCPA when they include words or symbols on collection envelopes that do not disclose the consumer's debtor status. *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004); *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Cal. 1991); *Lindbergh v. Transworld Sys., Inc.*, 846 F.Supp. 175, 180 (D. Conn. 1994). Implicit in these

5

holdings is the core belief that the FDCPA was not enacted to punish debt collectors for technical violations of the statute unaccompanied by any actual harm. After all, what purpose could possibly be served by punishing a debt collector for including a symbol on a collection envelope that does not cause any harm to its intended recipient?

While the *Spokeo* court acknowledged that a violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact, the court also emphasized that the violation must result in a real injury. *Id.* at 17. The Supreme Court did not elaborate on when a statute may confer Article III standing, but tellingly cited to the case of *Federal Election Commission v. Akins* in support of this proposition. *Id.* In *Akins*, the Supreme Court was asked to decide whether a group of voters had standing to challenge the Federal Election Commission's ("FEC") determination that the American Israel Public Affairs Committee ("AIPCAC") was not required to make certain disclosures about its membership under the Federal Election Campaign Act. The Supreme Court held that the violation of the statute was sufficient to confer standing. Notably, the court found that the "injury in fact" suffered by the plaintiffs consisted of "their inability to obtain information – lists of AIPAC donors, and campaign related contributions and expenditures – that . . . would help them . . . evaluate candidates for public office." According to the court, it was the violation of the statute – AIPAC's failure to make disclosures – that lead directly to the plaintiffs' injuries. Thus, in this circumstance, there was no need for the plaintiffs to allege an additional harm beyond the one Congress already identified.

In the present case, Plaintiff alleges that ARS violated § 1692f(8) of the FDCPA by including a barcode on a June 11, 2014 collection letter that was visible through a glassine window on the envelope. (Doc. 7 at ¶ 11). According to Plaintiff's legal theory, this conduct

6

violated the FDCPA because the barcode was embedded with an account number that was associated with Plaintiff's ARS account. (Doc. 7 at ¶ 11). Relying on *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), Plaintiff argues that the account number is personal identifying information which has the potential to identify Douglass as a debtor. (Doc. 20 at pgs. 3 – 4). In light of the Supreme Court's holding in *Spokeo*, however, Plaintiff lacks Article III standing to bring these claims because he has failed to allege an injury in fact.

It is true that *Douglass* held that an account number can violate the FDCPA because of its potential to harm the debtor.[1] Plaintiff, however, does not allege that the number embedded inside the barcode was ever revealed or accessed by a third party. The only way to extract the account number from the barcode is with a barcode equipped scanning device. If the barcode was never scanned, and the account number within the barcode was never revealed, then Plaintiff

---

[1] As argued in ARS' Motion for Judgment on the Pleadings and Reply Brief, outside of the Third Circuit, only a single district court has applied the language and symbol restrictions in § 1692f(8) to barcodes or account numbers. Every other Court who has addressed the issue has found that an account number, by itself, cannot disclose any information. *Gonzalez v. FMS, Inc.*, Civil Action No. 14-9424, 2015 U.S. Dist. LEXIS 87660, *17 (N.D. Ill. July 6, 2015); *Lucienna Gelinas v. Retrieval Masters Creditors Bureau, Inc.*, No. 15-cv-116, (W.D.N.Y. July 22, 2015); *Perez v. Global Credit and Collection, Corp.*, No. 1:14-cv-09413-CM, 2015 U.S. Dist. LEXIS 98692 (S.D. N.Y., July 27, 2015) (*Douglass* court's conclusion was "simply *ipse dixit*, unsupported by any analysis"); *Sampson v. MRS BPO, LLC*, Civil Action No. 15-C-2258, 2015 U.S. Dist. LEXIS 32422 (N.D. Ill. Mar. 17, 2015) (describing a *Douglass* 1692f(8) claim as "a bad joke – a joke because the claims are so patently absurd, and a bad one because $400 has been wasted on a filing fee."); *Schmid v. Transworld*, No. 15-C-02212, 2015 U.S. Dist. LEXIS 118708 (N.D. Ill. Sept. 4, 2015). Without access to ARS' internal system, the account number appears as a random string of numbers unaffiliated with anything in particular. Thus, even if someone did view the account number embedded within the barcode, there is absolute no evidence that they knew what this account number was, that it was in anyway related to Plaintiff's ARS Account, or that it was connected to an unpaid debt. Without this information, it is completely unclear how the disclosure of the account number could have possibly injured Plaintiff. The plain white envelope the collection notice was sent in was indistinguishable from the myriad of junk mail communications that arrive in plain white envelopes with glassine windows on a daily basis in the mailboxes of America. *Perez*, 2015 U.S. Dist. LEXIS 98692 at *10 – 11. Plaintiff's Amended Complaint fails to allege that a third party viewed this envelope, scanned the barcode, saw the account number and was able to identify Plaintiff as a debtor as a result of the random string of numbers that make up the ARS account number.

could not have suffered an injury. At most, anyone handling the collection notice would have only seen an ordinary barcode – a rectangular shaped series of black lines separated by white space.

Plaintiff's whole argument is premised on the fact that it is the account number within the barcode that violates the FDCPA. Without also alleging that the barcode was actually scanned and the account number revealed, Plaintiff has done nothing more than allege the type of procedural violation that *Spokeo* held was insufficient to establish Article III standing. Plaintiff's Amended Complaint simply alleges that: (1) the barcode was visible through the glassine window of the envelope; (2) the presence of words or symbols on a debt collection envelope, other than a debt collector's address, violates the FDCPA; and (3) the presence of the barcode violated the FDCPA. (Doc. 7 at ¶¶ 11 – 13). There are no other factual allegations in the Complaint. As the Supreme Court explained, just because Plaintiff was exposed to an abstract violation of law does not also mean that he automatically meets the Article III standing requirements. It is constitutionally mandated that Plaintiff identify a specific harm he suffered outside of the mere procedural violation of the FDCPA. Plaintiff has failed to identify any "concrete and particularized" injury in his Amended Complaint.

Unlike *Akins*, where the statutory violation led directly to the plaintiffs' injury, there is no corresponding injury when a debt collector violates the FDCPA by placing a barcode on a collection envelope. *See* 15 U.S.C. 1692f(8). While one may argue the presence of a barcode may technically violate the FCDPA – which precludes debt collectors from using any words or symbols other than their return address on a collection envelope – it is unclear how this violation, unaccompanied by any additional allegations regarding actual harm, could have injured the plaintiff. The *Spokeo* court recognized that under the FCRA, not all inaccuracies in a consumer

report cause harm or present any material risk of harm. *Spokeo*, 2016 U.S. LEXIS 3046 at *18. As an example, the Supreme Court looked at the consequences of an incorrect zip code and held that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

The same reasoning can be applied with equal force to the current case. As explained by the Eighth Circuit, the purpose of § 1692f is to prevent debt collectors from "using symbols on envelopes indicating that the contents pertain to debt collection." *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004 (quoting *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Cal. 1991). Here, the barcode does not provide any indication that the contents of the letter pertain to debt collection. The only way Plaintiff could have been injured by the barcode is if it was scanned by a third party, who was then able to identify the random string of numbers making up amail tracking number that was placed on the envelope by a third party vendor.. Not only does this seem high unlikely, it seems borderline preposterous that a third party would: (1) start scanning random barcodes on envelopes (which is illegal and protected under federal law); and (2) would know what the tracking number was since it can only be deciphered by cross-referencing it with the third party vendor's system and ARS' internal account system. Absent any allegations that the barcode was scanned and that Plaintiff suffered an injury as the result of that disclosure, Plaintiff has simply failed to allege sufficient facts to show a "concrete and particularized" injury.

Because Plaintiff has failed to allege a concrete and particularized injury as a result of ARS alleged violation of the FDCPA, this Court should find that Plaintiff does not have Article III standing to bring these claims, grant ARS' Motion for Judgment on the Pleadings, and dismiss Plaintiff's Amended Complaint with prejudice.

## II. CONCLUSION

Therefore, Defendant ARS National Services, Inc. respectfully requests that this Court grant ARS National Services, Inc.'s Motion for Judgment on the Pleadings, and enter an order dismissing Plaintiff's Amended Complaint with prejudice.

Dated: June 10, 2016

Respectfully Submitted,

/s/ Louis M. Ursini, III
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940
Rebecca M. Harris, Esq.
Florida Bar No. 104963
ADAMS AND REESE LLP
101 East Kennedy Blvd, Suite 4000
Tampa, Florida 33602
Tel: (813) 402-2880
Fax: (813) 227-5627

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2016 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the following are either listed to receive Notices of Electronic Filing through CM/ECF or a true and correct copy of the foregoing was sent via First Class Mail on this day:

John Herrera, Esq.
1801 Ponce de Leon Blvd.
Coral Gables, FL 33134
Email: service@johnherreralaw.com
Counsel for Plaintiff

/s/ Louis M. Ursini, III
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940